■ In the Matter of DAVID RIKARD, Appellant, v SHEILA MATSON, Respondent. (And Four Other Related Proceedings.) [914 NYS2d 460]—

Egan Jr., J. Appeal from an order of the Family Court of Greene County (Pulver Jr., J.), entered June 4, 2010, which, among other things, partially granted petitioner's application, in five proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a son (born in 2005). In May 2006, on the parties' stipulation, Family Court granted the parties joint legal custody and shared physical custody of the child. In May 2007, the court, again on stipulation of the parties, modified the custody order to continue to provide that the parties would have joint legal custody of the child—with the father having primary custody of the child and the mother having visitation every other week from Friday evening until the following Friday evening.

Between September 2008 and May 2009, each party commenced three proceedings pursuant to Family Ct Act article 6. The father commenced the first of these proceedings seeking sole legal and physical custody of the child, alleging, among other things, that the mother repeatedly changed residences without notifying the father, that the mother failed to disclose the present physical location of the child and that the mother had been unable to maintain a stable, suitable home for the child and ensure that the child's basic needs were met. In February 2009, the father commenced the second of these proceedings, alleging several violations of the modified custody order. Then, by cross petition filed in May 2009, the father sought custody of the child, alleging, among other things, that the mother had tested positive for Oxycontin and hydrocodone. In February 2009, the mother, in a cross petition, sought primary physical custody of the child, alleging, among other things, that the child's 83-year-old grandmother was actually the child's primary caregiver during the father's custodial time.[1] Thereafter, in April 2009, the mother commenced two more proceedings, one seeking enforcement of the existing custody order and the

---

1. By order dated April 14, 2009, Family Court dismissed this cross petition.

other seeking immediate temporary custody of the child upon the ground that the father had tested positive for cocaine and Xanax.

In February 2010, after several court appearances, the parties entered into a stipulation in which they acknowledged that the Family Court record was "detailed, lengthy and with a plethora of factual detail," and agreed that the court would "decide all issues outstanding" based upon the "personal or professional reports and/or letters and/or communications regarding the parties and their child" without conducting a plenary hearing or taking additional testimony. The court then rendered a decision on the remaining five petitions by denying the pending violation petitions and by awarding sole legal custody to the father and primary physical custody to the mother, with the father receiving visitation with the child on three weekends out of every month and every Wednesday afternoon. The father now appeals seeking physical custody of the child.[2]

Initially, we reject the father's contention that Family Court erred in rendering its decision based upon its review of the court's file without holding a hearing. Given his stipulation that Family Court determine all issues on the reports, letters, documents and communications contained in its file, the father cannot now, having received Family Court's decision, be heard to complain that the court erred in failing to conduct an evidentiary hearing (see *McAteer v McAteer*, 294 AD2d 783, 784 [2002]).

Turning to the merits, "[a]n alteration of an established custody arrangement requires a showing of a change in circumstances reflecting a real need for change in order to insure the continued best interest of the child" (*Matter of Henderson v MacCarrick*, 74 AD3d 1437, 1439 [2010] [internal quotation marks and citations omitted]). "In determining whether a modification will serve the best interests of the child[ ], factors to be considered include maintaining stability in the child['s life], the quality of the respective home environments, the length of time the present custody arrangement has been in place and each parent's past performance, relative fitness and ability to provide for and guide the [child's] intellectual and emotional development" (*Matter of Siler v Wright*, 64 AD3d 926, 928 [2009] [citations omitted]; *see Matter of Jeker v Weiss*, 77 AD3d 1069, 1070 [2010]). "[T]he pronounced deterioration of the parties' relationship to a point where they [are] antago-

---

**2.** The father has failed to address the denial of the violation petitions in his brief and, therefore, has abandoned any challenge with respect thereto (*see Kowalczyk v McCullough*, 55 AD3d 1208, 1210 n 2 [2008]).

nistic and embattled, unable to cooperate and communicate effectively or amicably for the sake of their [child's] welfare, . . . presents a sufficient change in circumstances" (*Matter of Kilmartin v Kilmartin*, 44 AD3d 1099, 1101 [2007]), such that a modification in custody is required and the court must consider the best interests of the child.

Here, the record reflects that the parties have engaged in custody disputes over the child beginning in 2005—the year the child was born. Multiple petitions and proceedings have followed. While the parties were able to stipulate to certain custody arrangements in 2006 and 2007, they were unable to do so in these matters. The parties' own submissions clearly reflect their inability to communicate and cooperate with each other with respect to the child. In his September 2008 petition, the father alleged a change in circumstances in that the parties were unable to communicate. In his May 2009 cross petition, the father alleged that the mother was unwilling to cooperate with him by scheduling medical and mental heath appointments for the child without his consent, the mother has failed to provide the father with the child's prescription medication and the mother has made offensive remarks about the father in public. The mother does not dispute the parties' inability to communicate and cooperate with respect to the child and, in turn, has alleged that it is the father who has scheduled the child's educational and medical appointments without her knowledge. Furthermore, a psychiatrist's evaluation revealed a "significant amount of tension between the parents" and confirms "consistent and ongoing fighting between [them]." Accordingly, we agree with Family Court that the parties are so "embattled and embittered" such that there has been a change in circumstances since the last custody order rendering joint custody of the child inappropriate (*Braiman v Braiman*, 44 NY2d 584, 590 [1978]; *see Matter of Henderson v MacCarrick*, 74 AD3d at 1439; *Matter of LaFountain v Gabay*, 69 AD3d 994, 995 [2010]). Having so decided, we turn to a consideration of what is in the child's best interests, noting that this Court "accord[s] great deference to [Family Court's] custodial determination provided that it is supported by a sound and substantial basis in the record" (*Matter of Torkildsen v Torkildsen*, 72 AD3d 1405, 1406 [2010]).

In addressing the parties' dueling petitions seeking custody of the child, the record reflects that, in response to a court-ordered drug test, the father tested positive for cocaine and Xanax, and the mother tested positive for Oxycontin and hydrocodone. The father claimed to have had a prescription for the Xanax, while the mother claimed to have had a prescription for the hydro-

codone. During one of the court appearances, the mother stated that she was in drug counseling. The father, on the other hand, never directly disputed his use of cocaine, but argued that he had not used drugs in the presence of the child. While the father repeatedly points to the mother's criminal history and allegations of prior neglect and/or abuse, we note that these acts occurred or are alleged to have occurred in the 1980s, long before the 2007 custody order, and are not the proper subject of the father's modification petitions (*see Matter of Fielding v Fielding*, 41 AD3d 929, 930 [2007]). Likewise, there is simply no support in the record for the father's allegations that the mother had subjected the child to unstable living conditions, that she failed to provide for the child's basic needs or that she was otherwise unable to care for the child.

However, the record does reflect that, during the father's custody time while he was at work, the child was under the care of the grandmother. The record also reflects that the child was evaluated by psychologist Gina Cosgrove and psychiatrist Harvey Scherer. Cosgrove diagnosed the child with attention deficit hyperactivity disorder, with related impulse control issues, which requires, among other things, certain therapies and a consistent daily schedule and structured environment. Scherer diagnosed the child with adjustment disorder with anxiety and noted that the child's behavioral issues may stem from the ongoing fighting between the mother and the father. In according due deference to Family Court's determination, this evidence, in addition to the father's positive drug test for cocaine, provides a substantial basis for Family Court's determination to award primary physical custody of the child to the mother (*see Matter of Paul T. v Ann-Marie T.*, 75 AD3d 788, 791 [2010], *lv denied* 15 NY3d 713 [2010]; *Matter of Torkildsen v Torkildsen*, 72 AD3d at 1406).[3]

The father's remaining contention is not properly before us.

Mercure, J.P., Malone Jr., Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.

---

3. We recognize that our decision to affirm results in a continuation of sole legal custody with the father and primary physical custody with the mother, an arrangement we generally find to be awkward, and, given the history of these parties, particularly troublesome in this case. However, as the mother did not appeal from Family Court's order, we are without authority to modify the award of sole legal custody to the father (*see Matter of Gardner v Gardner*, 69 AD3d 1243, 1244 n 1 [2010]; *Matter of Sanders v Slater*, 53 AD3d 716, 717 n [2008]; *Matter of Herman v Villafane*, 9 AD3d 525, 526 n [2004]).